UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 15-CR-00315-LHK |
|---|---|
| Plaintiff, | **ORDER DENYING COMPASSIONATE RELEASE** |
| v. | |
| SALVADOR PENALOZA DUARTE, | Dkt. No. 42 |
| Defendant. | |

Defendant Salvador Penaloza Duarte ("Defendant") is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the Correctional Institution North Lake ("CI North Lake"). Defendant moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as compassionate release. ECF No. 42. The government opposes the motion. ECF No. 46. The United States Probation Office rejected Defendant's release plan. ECF No. 44. For the reasons set forth below, the Court DENIES Defendant's motion.

I.   **LEGAL STANDARD**

18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The statute governing motions for sentence reductions, 18 U.S.C. § 3581(c)(1)(A), requires that courts "consider[] the factors set forth in section 3553(a)." Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

"[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court may grant the motion to reduce the defendant's sentence in two circumstances. As relevant here, a court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). The relevant Sentencing Commission policy statement enumerates several "extraordinary and compelling reasons." U.S. Sentencing Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1. A defendant fulfills one of the enumerated reasons when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of the community. *Id*. § 1B1.13(2).

## II.  DISCUSSION

In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements. First, a

2

defendant must exhaust his administrative remedies.  Second, a defendant must establish that the § 3553(a) sentencing factors "are consistent with" granting a motion for compassionate release. *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020).  Third, a defendant must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable Sentencing Commission policy statement—"warrant . . . a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Here, the government concedes that Defendant has exhausted his administrative remedies and therefore satisfies the first requirement under Section 3582.  ECF No. 46 at 2.  Thus, only the second two requirements are at issue in the instant case.

### A. Defendant fails to demonstrate extraordinary and compelling reasons justifying compassionate release.

At the time of Defendant's sentencing on May 18, 2016, Defendant was 39 years old, was 5'11", and weighed approximately 200 pounds.  Presentence Investigation Report ("PSR") ¶ 45, ECF No. 25.  Defendant's PSR reports that in 2011, Defendant suffered a hernia and a serious back injury at work.  *Id.*  Defendant has damage to two discs in his lower back and "is always in severe pain."  *Id.*  Defendant's PSR also notes that Defendant has had varicose veins since childhood.  *Id.*

In his motion, Defendant indicates that his age and health issues make him susceptible to severe illness or death from COVID-19.  ECF No. 42 at 2, 3.  Defendant does not identify his age in his motion.  ECF No. 42.  However, based on Defendant's birthdate in his PSR, Defendant is currently 44 years old.  Defendant's current age of 44 does not place him in a high-risk age group for severe COVID-19 illness.  In fact, the Centers for Disease Control ("CDC") state that the risk of getting severely ill from COVID-19 increases with age: "For example, people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited

3

Case No. 15-CR-00315-LHK
ORDER DENYING COMPASSIONATE RELEASE

April 8, 2021). Indeed, "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older." *Id.*

Defendant identifies a variety of health conditions in his motion, including hemiplegia, asymptomatic varicose veins, "morbid obesity," two dislocated discs, memory loss, head pain, nosebleeds, poor vision, chest pain, and lack of energy. ECF No. 42 at 4. Of these conditions, only obesity is identified by the CDC as a medical condition which may increase a person's risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 8, 2021).

The CDC defines a person as obese when his Body Mass Index ("BMI") is between 30 and less than 40 and defines a person as severely obese when his BMI is 40 or greater. *See People with Certain Medical Conditions*, CDC (Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant does not identify his current weight or BMI in his motion. Based on Defendant's height of 5'11" and weight of approximately 200 pounds in Defendant's PSR, Defendant has a BMI of approximately 27.9. PSR ¶ 45; *see also Adult BMI Calculator*, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculat ca.html (last visited Apr. 12, 2021). Thus, Defendant does not qualify as obese and thus lacks a medical condition that may increase his risk of severe illness from COVID-19.

Moreover, Defendant has already contracted and recovered from COVID-19. Defendant speculates that his health conditions put him in "grave danger of suffering severe consequences should he be re-infected." ECF No. 42 at 4. The government notes in its opposition that Defendant tested positive for COVID-19 in May 2020 and has recovered, "vitiating any medical emergency." ECF No. 46 at 9. The government contends that Defendant's concern that his medical conditions would cause severe illness or death from COVID-19 are belied by his recovery. *Id.*

Defendant, who is 44 years old, does not have a medical condition that may increase his

4

Case No. 15-CR-00315-LHK
ORDER DENYING COMPASSIONATE RELEASE

risk of serious illness from COVID-19, and recovered from COVID-19 last year, has failed to demonstrate extraordinary and compelling reasons justifying compassionate release.

**B. The Section 3553(a) factors do not warrant sentence reduction in the instant case.**

The Court also denies Defendant's motion for compassionate release for another independent reason: "the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

On February 3, 2016, Defendant pleaded guilty to two counts of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). *See* Minute Entry from Change of Plea Hearing, ECF No. 24; Indictment, ECF No. 6. Specifically, on July 22, 2014, Defendant sold approximately half a pound of methamphetamine that was 99.2% pure to an undercover agent. PSR ¶¶ 6-7. On September 18, 2014, Defendant sold approximately a pound of methamphetamine that was 99.4% pure to the same undercover agent. *Id.* ¶ 8. On May 28, 2015, Defendant agreed to meet with the undercover agent to sell two kilograms of methamphetamine. *Id.* ¶ 10. Defendant was arrested during this third transaction with more than 2 kilograms of 100% pure methamphetamine. *Id.* In total, Defendant was the sole distributor of approximately 2.67 kilograms of methamphetamine across the three transactions. *Id.*

In a search of Defendant's apartment on the day of his arrest for the instant offense, law enforcement found a sawed-off shotgun, a revolver, 22 rounds of ammunition, four digital scales, and plastic bags containing methamphetamine, cocaine, and marijuana. PSR ¶¶ 11-12. The sawed-off shotgun was unregistered and had an obliterated serial number. ECF No. 26 at 4-5.

At the time of his arrest, Defendant was prohibited from possessing firearms and

1  ammunition because of his two prior convictions for domestic violence and because of his
2  unlawful immigration status in the United States. *Id*. at 4-5. Moreover, it is unlawful for anyone
3  regardless of criminal history or immigration status to possess an unregistered sawed-off shotgun.
4  *Id*. at 5. Moreover, it is unlawful for the shotgun to have an obliterated serial number. *Id*.

As to Defendant's two domestic violence offenses, one occurred on April 27, 2006, when Defendant struck his then-girlfriend on the head four times and slapped her face while she was feeding their 8-month-old baby. PSR ¶ 29. Defendant then took the baby away from the victim and told the victim to leave the residence. *Id*. After leaving the residence, the victim called the police. *Id*. As a result of Defendant's strikes and slap, the victim suffered redness and swelling in her face and head as well as a cut on her lip. *Id*. For this offense, Defendant was sentenced to 48 months of probation and 21 days in county jail on May 24, 2006. *Id*. On December 21, 2006, Defendant's probation was revoked, and a bench warrant was issued. *Id*.

At the time of the April 27, 2006 incident, the victim stated that she had been in an abusive relationship with Defendant for the past year and that she feared for herself and her baby. *Id*. The victim stated that 6 months prior Defendant threw the victim down to the ground which caused the victim to hit the corner of the bed and suffer a laceration on her upper lip which required 5 stitches. *Id*. Defendant took the victim to the hospital and told the victim to state that she had fallen from the bed. *Id*. The victim also stated that on another occasion Defendant threw the victim down to the bed, which caused the victim to hit the back of her head on the wall. *Id*. The couple's two month old baby was on the bed when this took place. *Id*. The victim did not report these two incidents because she feared that Defendant would take the baby away from her. *Id*.

Defendant's second domestic violence offense took place on December 5, 2009. PSR ¶ 30. On that day, the victim called Defendant to ask about money for their child. *Id*. When the victim could not contact Defendant, the victim and her two roommates went to Defendant's home address. *Id*. The victim approached Defendant on the sidewalk outside the residence to tell Defendant that she needed money for their child. *Id*. In response, Defendant pushed the victim in the chest, called her the daughter of a whore, and threatened to kill her. *Id*. After the victim

returned to her vehicle, Defendant opened the vehicle door and kicked the victim in the chest. *Id*. For this offense, Defendant was sentenced to 36 months of probation and 30 days in county jail. *Id*. At the time of the December 5, 2009 incident, the victim reported that Defendant had hit the victim in the past and that they have approximately 6 additional incidents of violence. *Id*.

In the instant criminal case, each of Defendant's two methamphetamine distribution counts of conviction have a 120 month or ten year mandatory minimum term of imprisonment by statute. PSR ¶ 55. In fact, Defendant sold more than 53 times the minimum quantity needed to trigger the 120 month mandatory minimum term. *Id*. at 19. Defendant's United States Sentencing Guidelines range was 188 to 235 months. *Id*. ¶ 56. The government and the United States Probation Office recommended a low end sentence of 188 months. *Id*. at 18. Defendant requested a downward departure or a downward variance to the 120 month mandatory minimum term of imprisonment. ECF No. 27. On May 18, 2016, the Court sentenced Defendant to 150 months of imprisonment, consisting of 150 months on each count, to be served concurrently. Judgment, ECF No. 30.

Defendant has been in federal custody since May 28, 2015. PSR ¶ 3. Assuming Defendant qualifies for good time credits, Defendant's projected release date is January 21, 2026. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited April 12, 2021). Thus, Defendant's motion requests that he be released nearly 5 years early and before Defendant has served the ten year mandatory minimum term of imprisonment.

The Third and Fifth Circuits have held that district courts may consider the length of time remaining on a defendant's sentence when determining whether to grant compassionate release. *See United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate release based on the defendant's having served only 19 months of a 180 month sentence); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30 year sentence). Moreover, United States District Judge Jon Tigar of the Northern District of California concluded

7

that permitting compassionate release for a defendant who "has served only roughly 20 percent of his sentence . . . would not satisfy 'the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense.' Nor would it 'afford adequate deterrence to criminal conduct' or adequately 'protect the public from further crimes of the defendant.'" *United States v. Furaha*, 445 F. Supp. 3d 99, 103 (N.D. Cal. 2020) (citation omitted) (original ellipses omitted) (quoting 18 U.S.C. § 3553(a)(2)(A)-(C)). United States District Judge Richard Seeborg of the Northern District of California has likewise held that, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis," with a longer remaining sentence weighing against granting any such motion. *United States v. Connell*, No. 18-CR-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).

The Court finds that granting Defendant's motion for compassionate release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as required by 18 U.S.C. § 3553(a).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for compassionate release.

**IT IS SO ORDERED.**

Dated: April 12, 2021

_____
LUCY H. KOH
United States District Judge