STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    marissa.harris@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 15-CR-00315 EJD |
| Plaintiff, | ) |
| | ) UNITED STATES' OPPOSITION TO |
| v. | ) DEFENDANT'S MOTION FOR |
| | ) COMPASSIONATE RELEASE FROM CUSTODY |
| SALVADOR PENALOZA DUARTE, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

    Defendant, Salvador Penaloza Duarte, seeks compassionate release under 18 U.S.C.
§ 3582(c)(1)(A)(i) citing concerns about the risks of severe illness from COVID-19 while in federal
custody.  This is the second time in less than a year that Defendant has moved for compassionate
release.  His prior motion, citing the exact same medical conditions and grounds for release, was denied
by the Honorable Lucy Koh on April 12, 2021. *See* ECF No. 48.  This second motion should also be
denied, given that Defendant has already contracted and survived COVID-19, has now been fully
vaccinated against COVID-19, and has no documented medical conditions that place him in a higher
risk category of morbidity should he be reinfected with COVID-19.  Furthermore, Defendant continues

1  to present a danger to the community, a risk of flight, has significant time remaining on his federal

2  custodial sentence, and has no viable release plan.  All of these factors militate against release under 18

3  U.S.C. § 3553(a).

4                                                **BACKGROUND**

5           In 2015, Defendant was charged with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii)

6  (possession and distribution of a controlled substance). PSR ¶1. On February 3, 2016, Defendant entered

7  an open guilty plea to two instances of distribution of methamphetamine on July 22, 2014, and

8  September 18, 2014, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). *Id*. at ¶¶ 2, 8, 10.  In

9  total, Defendant possessed and sold approximately 2.67 kilos of methamphetamine.  Agents also

10  recovered a .44 caliber Charter Arms Bulldog revolver, a 20-gauge Remington model 870 Wingmaster

11  short-barreled shotgun with an obliterated serial number, and ammunition from Defendant's home. *Id*. at

12  ¶ 11.  At the time of these offenses, Defendant has two prior domestic violence convictions for physical

13  attacks against his former girlfriend: one while she was feeding their baby, the other after she requested

14  child support.  *See* PSR ¶¶ 29-30.  The presence of these firearms underscores the importance of

15  protecting the public from this Defendant.

16          Defendant is 45 years old. The U.S. Probation Office's Presentence Investigation Report noted

17  that Defendant has suffered from a serious back injury since 2011 but did not mention any other medical

18  conditions. PSR ¶ 45. Defendant been subject to an active immigration detainer since 2017 and will

19  likely be deported upon his release from prison.

20          On May 18, 2016, Judge Koh sentenced Defendant to 150 months' prison and five years'

21  supervised release. ECF No. 30.  Defendant is presently serving his sentence at North Lake Correctional

22  Facility (NLCF) in Baldwin, MI, with a projected release date of January 21, 2026.  NLCF is a privately

23  owned facility that houses 1,727 inmates on behalf of BOP.  At present, there are no inmates who have

24  recently tested positive for COVID.  There are 165 inmates who previously tested positive and have

25  recovered.  There were two COVID-related deaths at this institution.[1]

26

27

28

---

[1] To find current COVID statistics for North Lake Correctional Facility, go to the BOP COVID statistics page.  Scroll down to the heading COVID-19 cases.  Click the link that says "Full breakdown and additional details..."  In the section that pops up, the last paragraph says "privately-managed prisons".  Click that link and navigate to North Lake.

GOV. OPP. TO COMPASSIONATE RELEASE

2

1    On December 22, 2020, Defendant submitted a petition for compassionate release to Mr. T.

2    Johns, Facility Administrator of the NLCF. See ECF Nos. 42; 46-1. Mr. Johns denied the request on or

3    about January 22, 2021. *See id.* On March 8, 2021, Defendant filed his first motion for compassionate

4    release. ECF No. 42. Defendant complained that his age, alleged obesity, hemiplegia, varicose veins,

5    dislocated discs in his back, occasional nose bleeds, impaired vision, memory loss, head pain, chest

6    pain, and low energy placed him at higher risk for COVID-19 morbidity. ECF No. 42. at 4. The

7    government opposed. *See* ECF No. 46.

8    On April 12, 2021, Judge Koh denied Defendant's first motion for compassionate release. ECF

9    No. 48. Judge Koh found that Defendant's middle age did not place him in a higher risk category

10   according to the CDC. *See id.* at 3. Judge Koh also found that none of Defendant's cited medical

11   conditions placed him at higher risk of COVID-19 morbidity according to the CDC. *Id.* at 4. Judge Koh

12   also rejected Defendant's claim of obesity, finding that his weight and height did not yield a Body Mass

13   Index ("BMI") greater than 30. *Id.* Judge Koh also discredited Defendant's speculation that reinfection

14   with COVID-19 potentially placed him in "grave danger of suffering severe consequences" given his

15   prior asymptomatic recovery from COVID-19 and lack of medical conditions that actually increase his

16   risk of severe complications. *Id.* at 4-5. Finally, Judge Koh found that the sentencing factors under 18

17   U.S.C. § 3553(a) did not weigh in favor of early release. *See id.* at 5-8.

18   On April 21, 2021, Defendant filed a motion for reconsideration. ECF No. 49. On April 23,

19   2021, Judge Koh denied Defendant's motion for reconsideration. ECF No. 50. On May 21, 2021,

20   Defendant filed a second motion for reconsideration. ECF No. 51. That second motion was denied on

21   May 25, 2021. ECF No. 52. On March 24, 2022, Defendant filed the instant Motion, largely parroting

22   the claims he made in his last motion. There are no records of any renewed request to the administrator

23   of NLCF after the Court's last denial.

24   The government requested refreshed medical records, which are filed under seal as Exhibit A to

25   government counsel's declaration in support of this Opposition ("Gov. Ex. A"). These records indicate

26   that Defendant was fully vaccinated against COVID-19 on May 13, 2021 and December 21, 2021. *See*

27   Gov. Ex. A at 135. The case was subsequently reassigned to the Honorable Edward Davila, who

28   ordered a response by March 31, 2022. This Opposition follows.

GOV. OPP. TO COMPASSIONATE RELEASE

1                                  **ARGUMENT**

2   **I.**      **<u>Defendant Has Not Administratively Exhausted</u>**

3       In March 2021, Defendant filed his first motion for compassionate release.  This was after

4 submitting a request to the administrator at NLCF, who denied compassionate release.  In its Opposition,

5 the government conceded that Defendant properly exhausted his administrative remedies because of the

6 denied request from the administrator at NLCF.  *See* ECF No. 46 at 2 n.2.  Judge Koh adjudicated and

7 resolved Defendant's first request for compassionate release through three separate Orders denying

8 release.  *See* ECF Nos. 48, 50, 52.  There is no indication in Defendant's filings that he submitted a new

9 request in writing to the administrator at NLCF stating any new basis for relief.   To the extent that this

10 latest motion recycles his previously adjudicated arguments, the Court should deny this third request for

11 reconsideration.  To the extent that Defendant's second motion raises any new claims, he has not

12 properly exhausted his administrative remedies as required by the Ninth Circuit.

13       18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132

14 Stat. 5194, provides in pertinent part that the court "may not modify a term of imprisonment once it has

15 been imposed except" upon a defendant's motion "after the defendant has fully exhausted all

16 administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

17 behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's

18 facility, whichever is earlier," where such a reduction also meets other specified requirements.

19       Under binding Ninth Circuit precedent, "§ 3582(c)(1)(A)'s administrative exhaustion

20 requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked."

21 *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021); *see also Fort Bend County, Texas v. Davis*,

22 139 S. Ct. 1843, 1849 (2019) (stating that claim-processing rules are those that "seek to promote the

23 orderly progress of litigation by requiring that the parties take certain procedural steps at certain

24 specified times" and quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (internal

25 quotation and alterations omitted)).  "A court may not excuse a defendant's failure to comply with a

26 statutory exhaustion requirement." *United States v. Fuentes*, 834 F. App'x 414, 415 (9th Cir. 2021)

27 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016)).  A statutory exhaustion scheme such as is

28 included in § 3582(c)(1) is a "mandatory exhaustion regime[ ], foreclosing judicial discretion" and

1  requires dismissal where raised.  *Ross*, 136 S. Ct. at 1857.

2        The government raises the rule here, and it must be enforced.  *See Keller*, 2 F.4th at 1282–83.  In

3  *Keller*, the Ninth Circuit found that a defendant's second claim for relief under § 3582(c)(1)(A) was not

4  properly exhausted because the defendant waited only eight days before seeking relief from the district

5  court.  *Id.  Keller* specifically rejected the defendant's argument that his prior request from months

6  earlier sufficed in part because "procedural rules"—such as the exhaustion requirement here—"allow

7  the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for

8  litigation *before* it begins."  *Id.* at 1283 (original emphasis).  The Court should reach the same

9  conclusion here.  Defendant submitted a request more than a year ago to his Warden, but that request

10 and the resulting litigation were resolved by this Court's prior orders denying compassionate release.

11 Defendant provides no reason why any new claims were not submitted to Warden so that BOP may

12 follow its internal process as *Keller* envisions.  Thus, the defendant has failed to exhaust his

13 § 3582(c)(1)(A) claim and this Court should dismiss his motion on that basis alone.  *See id.* at 1283 n.2

14 (noting that a court need not address the merits when denying a compassionate release motion for failure

15 to exhaust administrative remedies).

16 **II.      Reduction of Defendant's Sentence is Not Warranted**

17        Although the COVID-19 pandemic is an extraordinary world event, Defendant has failed to

18 show that that its impact warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because

19 he has already contracted and recovered from COVID, received COVID-19 vaccines, and is not

20 suffering from a medical condition that the CDC has identified as particularly at risk for severe

21 symptoms if he were to again contract COVID-19.  Furthermore, re-balancing the Section 3553(a)

22 factors does not indicate the defendant should be released immediately as he seeks.

23        **A.      Applicable law**

24        This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after

25 considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court

26 "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is

27 at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent

28 with applicable policy statements issued by the Sentencing Commission."  *See, e.g.*, *United States v.*

1   *Reid*, No. 17-cr-00175-CRB-1, 2020 WL 2128855, at *1–2 (N.D. Cal. May 5, 2020); *United States v.*

2   *Robinson*, No. 18-CR-00597 RS, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020).  United States

3   Sentencing Guidelines (USSG) § 1B1.13 sets forth a policy statement regarding "Reduction in Term of

4   Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)."

5        The Ninth Circuit recently held, in line with every circuit to have considered the issue, that

6   USSG § 1B1.13 is not an "applicable" policy statement within the meaning of Section 3582(c)(1)(A) for

7   motions filed by a defendant, rather than the Director of BOP.  *United States v. Aruda*, --- F.3d ---,

8   No. 20-10245, 2021 WL 1307884, at *2–4 (9th Cir. Apr. 8, 2021) (citing other circuit opinions as

9   persuasive).[2]  However, the Court also held that "U.S.S.G. § 1B1.13 may inform a district court's

10  discretion for § 3582(c)(1)(A) motions filed by a defendant[.]"  *Id.* at *4.  Courts, including in this

11  district, have concluded that—even if not binding—the policy statement "establish[es] helpful objective

12  guideposts for evaluating whether a defendant should be granted compassionate release under

13  § 3582(c)(1)(A)."  *United States v. Rekhi*, No. 19-CR-00180-CRB-1, 2021 WL 411376, at *3 (N.D. Cal.

14  Feb. 4, 2021); *United States v. Burrill*, 445 F. Supp. 3d 22, 24–25 n.2 (N.D. Cal. 2020); *see also United*

15  *States v. McGee*, --- F.3d ---, No. 20-5047, 2021 WL 1168980, at *8 (10th Cir. Mar. 29, 2021) ("[W]e

16  conclude that Congress . . . intend[ed] for the Sentencing Commission to . . . describe those

17  characteristic or significant qualities or features that typically constitute 'extraordinary and compelling

18  reasons,' and for those guideposts . . . to be considered by district courts[.]"); *United States v. Gunn*, 980

19  F.3d 1178, 1179–81 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis

20  in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling

21  reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has

22  been abused.").  And regardless of the policy statement, Congress has explicitly stated that

23  "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

24  28 U.S.C. § 994(t).

25        As a permissible source to "inform" this Court's discretion under *Aruda*, USSG § 1B1.13

26  describes "extraordinary and compelling reasons" to include:  (1) medical conditions which diminish the

27

28

---

[2]  The government hereby preserves its argument that the policy statement is binding and *Aruda* was wrongly decided.

GOV. OPP. TO COMPASSIONATE RELEASE

1    ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family

2    circumstances, or (4) other extraordinary and compelling reasons that exist either separately or in

3    combination with the previously described categories as determined by the BOP Director.  USSG

4    § 1B1.13, cmt. n.1.  It also advises that relief not be granted for a defendant who poses "a danger to the

5    safety of any other person or to the community."  USSG § 1B1.13(2).  As one court in this district

6    noted—regardless of whether the policy statement is binding—these categories "are sensible." *Rekhi*,

7    2021 WL 411376, at *2–3.

8            Defendant bears the burden to show special circumstances meeting the high bar set by Congress

9    for compassionate release to be granted.  *See United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt.

10   571 (N.D. Cal. May 12, 2020); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31,

11   2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and

12   citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)).  Even absent a binding policy

13   statement in the Guidelines, the statute requires that a defendant show "exceptional and compelling"

14   reasons for a sentence reduction—a separate textual point than the analysis under Section 3553(a),

15   indicating that Congress did not view every inmate who could successfully articulate the need for a

16   rebalanced Section 3553(a) analysis as meriting relief under the statute.  Instead, a defendant must make

17   a separate showing of "exceptional and compelling" reasons meriting sentence modification.

18           **B.      Defendant has not presented extraordinary and compelling reasons warranting his
                      release**
19

20           The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person

21   in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement

22   describes specific serious medical conditions afflicting an individual inmate, not generalized threats to

23   the entire population. "The mere existence of COVID-19 in society and the possibility that it may spread

24   to a particular prison alone cannot independently justify compassionate release, especially considering

25   BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United

26   States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Hegyi*, 2020 WL 7090710, at

27   *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large

28   numbers, does not justify compassionate release on its own.").

GOV. OPP. TO COMPASSIONATE RELEASE

1    The CDC's list of risk factors appears at https://www.cdc.gov/coronavirus/2019-ncov/need-

2 extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that makes people

3 "more likely to get very sick from COVID-19." Defendant is not eligible for compassionate release

4 because he does not suffer from any condition on the CDC's list of risk factors, or indeed any chronic

5 medical ailment that cannot be managed by the facility's existing medical procedures and care.  Judge

6 Koh already considered and evaluated Defendant's asserted medical conditions and did not find any

7 extraordinary or compelling reason to grant compassionate release.  *See* ECF No. 48 at 3-5.

8 Accordingly, the instant motion, offering the exact same medical conditions as the basis for relief,

9 should be denied.  *See, e.g.*, *United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020)

10 (Bartle, J.) (denied for inmate who presents no health conditions); *United States v. Haney*, 454 F. Supp.

11 3d 316 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.) (denied for 61-year-old with no other conditions).

12    Defendant claims he is "morbidly obese," however his medical records do not support this claim.

13 According to his medical records, as of September 19, 2021, defendant weighed approximately 204

14 pounds and with a height of 5'11".  His BMI is therefore 28.4, making him mildly overweight not

15 "morbidly obese" as he claims.  *See* Gov. Ex. A at 135.[3]  Courts have often denied compassionate

16 release based on mild obesity alone, particularly where the defendant is relatively young and does not

17 present any related ailment.  *See, e.g.*, *United States v. Aguilar*, 2020 WL 6081779, at *4 (N.D. Cal. Oct.

18 15, 2020) (Koh, J.) (relief denied to 27-year-old with BMI of 37.5; the court cites numerous cases and

19 "notes that other courts have declined to grant compassionate release to otherwise healthy and young

20 inmates with obesity as their only cognizable risk factor, absent other indications of serious medical

21 risk."); *United States v. Lucero*, 2021 WL 1297828, at *2 (S.D. Cal. Apr. 7, 2021) (Sabraw, J.) (BMI of

22 29 does not warrant release).

23    Moreover, the defendant has received both the Janssen and the Johnson and Johnson vaccines.

24 Gov. Ex. A at 135.  That similarly precludes eligibility for compassionate release and significantly

25 lessens any risk of severe complications from reinfection with the virus. *See, e.g.*, *United States v. Smith*,

26 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific

27

28
[3] BMI calculator available at
https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

GOV. OPP. TO COMPASSIONATE RELEASE

1   consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to

2   the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").  Defendant's vaccines

3   permit effective self-care against severe illness or death that may be caused by the coronavirus. The

4   CDC states that the vaccines are "safe and effective," and "[g]etting vaccinated prevents severe illness,

5   hospitalizations, and death." https://www.cdc.gov/aging/covid19/covid19-older-adults.html (accessed

6   Sept. 12, 2021).  The vaccines were the subject of extensive clinical trials before authorization, which

7   revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death.

8   The data thus far show remarkable success in the real world.  The CDC reports that as of March 30,

9   2022, "studies continue to show that COVID-19 vaccines are effective at preventing severe disease from

10  COVID-19, including hospitalization." https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness.

11  A full two shot vaccination course puts the patient at much lower risk for infection and death.  *See*

12  https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status.  Accordingly, once a vaccine is

13  available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone.

14  *See United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that

15  COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate

16  release motions [based on COVID-19] generally lack merit.").  The vast majority of courts have agreed

17  with this conclusion.  *See, e.g., United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021)

18  (Brown, J.) (citing many cases).

19      Based on the success of presently available vaccines, courts have also denied compassionate

20  release in the face of emerging variants of COVID-19.  *See, e.g., United States v. Jackson*, 2021 WL

21  3417910, at *3 (E.D. Mich. Aug. 5, 2021) (Goldsmith, J.) ("While it is true that new variants—

22  particularly the Delta variant—are on the rise, the CDC states that '[c]urrent data suggest that COVID-

23  19 vaccines authorized for use in the United States offer protection against most variants currently

24  spreading in the United States.' Thus, Jackson could have mitigated his fear of COVID-19 variants by

25  getting vaccinated. Accordingly, the Court will not grant Jackson release based on his alleged fear of

26  variants.").  It is possible that the scientific consensus may shift if, for example, the efficacy of the

27  vaccines changes over time, or variants emerge that bypass the vaccines. The government will address

28  those issues as they arise. But at present, absent such a "shift in the scientific consensus, vaccination

GOV. OPP. TO COMPASSIONATE RELEASE

1   against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is

2   'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL

3   364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.).

4          In sum, absent a significant change in the current scientific assessment regarding the efficacy of

5   the vaccines, the defendant is well-protected from reinfection.  The defendant also contracted COVID-

6   19 and apparently recovered from it without significant consequence.  For all of these reasons,

7   compassionate release is not warranted here.

8          **C.      This Court should not modify Defendant's sentence because he presents a risk of
               harm to the public and the § 3553(a) factors militate against relief**

9

10         This Court may not reduce Defendant's sentence unless it finds that "the defendant is not a

11  danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."

12  U.S.S.G. § 1B1.13(2).  Furthermore, the Court may only reduce a sentence under 18 U.S.C. §

13  3582(c)(1)(A) if supported "after considering the factors set forth in section 3553(a)," which includes

14  "the nature and circumstances of the offense and the history and characteristics of the defendant," "the

15  need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law,

16  and to provide just punishment for the offense," and "to protect the public from further crimes of the

17  defendant[.]"  18 U.S.C. § 3553(a)(1)–(2).

18         The government reasserts all arguments it made in its prior Opposition regarding the severity of

19  Defendant's offenses, his possession of illegal firearms during and in connection with the offense, and

20  his violent criminal history.  *See* ECF No. 46 at 14-17.  The government further reasserts its position that

21  the § 3553(a) factors continue to militate against release.  *See id*. at 17-19.  Judge Koh agreed with the

22  government's assessment and there is no basis to disturb that finding.  *See* ECF No. 48 at 5-8.

23  Defendant's latest motion should be denied.

                                        **CONCLUSION**

24

25         Defendant did not exhaust all administrative rights and is a danger to others.  He has not

26  presented evidence of a serious medical condition that substantially impairs his ability to provide self-

27  care or any other extraordinary or compelling reason to warrant a reduced sentence.  This Court should

28  therefore deny Defendant's motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i).

GOV. OPP. TO COMPASSIONATE RELEASE

1  DATED:  March 31, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
MARISSA HARRIS
Assistant United States Attorney